# Exhibit E

**INTERNATIONAL CENTRE FOR SETTLEMENT OF INVESTMENT DISPUTES**

In the annulment proceeding between

**BOLIVARIAN REPUBLIC OF VENEZUELA**

Applicant

and

**TENARIS S.A. AND TALTA - TRADING E MARKETING SOCIEDADE UNIPESSOAL LDA**

Respondents

**ICSID Case No. ARB/11/26**

---

**DECISION ON THE REQUEST TO MAINTAIN
THE STAY OF ENFORCEMENT OF THE AWARD**

---

*Members of the ad hoc Committee*

Dr. Andrés Rigo Sureda, President
Professor Piero Bernardini
Professor Diego P. Fernández Arroyo

*Secretary of the ad hoc Committee*

Mrs. Ana Constanza Conover Blancas

24 March 2017

## REPRESENTATION OF THE PARTIES

Representing the Bolivarian Republic of Venezuela:

Dr. Reinaldo Enrique Muñoz Pedroza
Dr. Felipe Daruíz
Dra. Erika Fernández
Procuraduría General de la República
Av. Los Ilustres, c/c Francisco
Lazo Martí
Urb. Santa Mónica
Caracas 1040
Venezuela

Mr. Kenneth Figueroa
Mr. Alberto Wray
Mrs. Analía González
Mrs. Rebecca Gerome
Mr. José Rebolledo
Mrs. Francheska Loza
Foley Hoag LLP
1717 K Street NW, Suite 1200
Washington, DC 20006
United States of America

Mr. Ignacio Torterola
Mr. Diego Gosis
Mr. Quinn Smith
Mrs. Verónica Lavista
Mr. Guillermo Moro
GST LLP
1875 I Street NW, 5th floor
Washington, DC 20006
United States of America

Representing Tenaris S.A. and Talta - Trading e Marketing Sociedade Unipessoal LDA:

Mr. Nigel Blackaby
Mrs. Caroline Richard
Freshfields Bruckhaus Deringer
US LLP
700 13th Street, NW, 10th floor
Washington, DC 20005
United States of America

Mr. Elliot Friedman
Mr. Ben Love
Mrs. Elizabeth Skeen
Freshfields Bruckhaus Deringer
US LLP
601 Lexington Avenue,
31st floor
New York, NY 10022
United States of America

i

# TABLE OF CONTENTS

I.   PROCEDURAL BACKGROUND ......................................................................... 1

II.   SUMMARY OF THE PARTIES' POSITIONS ................................................. 5

  1.   First Submission ...................................................................................... 5

  2.   First Submission in Opposition to the Request for a Stay ........................... 6

  3.   Second Submission .................................................................................. 9

  4.   Second Submission in Opposition to the Request for a Stay ..................... 12

  5.   Third Submission ................................................................................... 14

  6.   Third Submission in Opposition to the Request for a Stay ........................ 15

III.   THE PARTIES' REQUESTS FOR RELIEF ..................................................... 17

  1.   Venezuela's Request for Relief ............................................................... 17

  2.   Respondents' Request for Relief ............................................................. 17

IV.   ANALYSIS OF THE *AD HOC* COMMITTEE .............................................. 18

  1.   The Legal Framework ............................................................................. 18

  2.   Preliminary Considerations .................................................................... 20

  3.   The Burden of Proof ............................................................................... 21

  4.   Do Circumstances Exist that Require the Continuity of the Stay of
       Enforcement of the Award? ..................................................................... 22

  A.   Damages Alleged by the Parties .............................................................. 22

  B.   Difficulty in Recovering the Amounts Paid in Compliance with the
       Award   23

  C.   Compliance with International Obligations ............................................... 24

  D.   Weighting of How the Continuation or Lifting of the Stay
       of Enforcement Affects the Parties .......................................................... 25

  E.   Stay of Enforcement of the Award Conditioned to the Granting
       of a Bank Guarantee ............................................................................... 26

V.   COSTS ......................................................................................................... 26

VI.   DECISION ................................................................................................... 27

1.  This decision is issued concerning the request of the Bolivarian Republic of Venezuela (the "**Applicant**" or "**Venezuela**") to maintain the provisional stay of enforcement of the award rendered on January 29, 2016 ─including the Decision on Rectification of the Award issued on June 24, 2016 (jointly, the "**Award**") by the tribunal composed of Messrs. John Beechey (President), Judd L. Kessler and Toby Landau (the "**Tribunal**") in ICSID Case No. ARB/11/26, initiated by Tenaris SA and Talta - Trading e Marketing Sociedade Unipessoal LDA (the "**Respondents**" in the annulment or "**Tenaris and Talta**" and, together with the Applicant, the "**parties**").

## I.      PROCEDURAL BACKGROUND

2.  On September 21, 2016, Venezuela submitted to the Secretary-General of the International Centre for Settlement of Investment Disputes ("**ICSID**") an application for annulment of the Award (the "**Application for Annulment** ").

3.  Venezuela bases its Application for Annulment on the following grounds set forth in Article 52 of the Convention on the Settlement of Investment Disputes between States and Nationals of Other States ("**ICSID Convention**"): *(i)* the Tribunal manifestly exceeded its powers (Article 52(1)(b) of the ICSID Convention); *(ii)* the tribunal seriously departed from a fundamental rule of procedure (Article 52(1)(d) of the ICSID Convention); and *(iii)* the award failed to state the reasons on which it was based (Article 52(1)(e) of the ICSID Convention).

4.  The Request for Annulment included a request to stay the enforcement of the Award until the *ad hoc* committee rendered its decision on the Application for Annulment (the "**Request for a Stay**") pursuant to Article 52 of the ICSID Convention and Rule 54 of the Rules of Procedure for Arbitration Proceedings ("**ICSID Arbitration Rules**").

5.  On September 29, 2016, the Acting Secretary General registered the Application for Annulment and notified the parties of the provisional stay of enforcement of the Award pursuant to Rule 54(2) of the ICSID Arbitration Rules.

6.  On December 27, 2016, the Acting Secretary-General notified the parties of the constitution of the *ad hoc* Committee (the "**Committee**") in accordance with Rule 52(2) of the ICSID Arbitration Rules.  The Committee is composed of

Dr. Andrés Rigo Sureda (President), a national of Spain, appointed to the ICSID Panel of Arbitrators by the Kingdom of Spain; Professor Piero Bernardini, a national of Italy, appointed to the ICSID Panel of Arbitrators by the Italian Republic; and Professor Diego P. Fernández Arroyo, a national of Argentina and Spain, appointed to the ICSID Panel of Arbitrators by the Argentine Republic.

7. On that same date, the parties were informed that the annulment procedure was deemed to have been initiated in accordance with Rules 6 and 53 of the ICSID Arbitration Rules.  The parties were also informed that Mrs. Ana Conover, ICSID Legal Counsel, would serve as Secretary of the Committee.

8. By communications dated January 9 and 10, 2017, the parties informed the Committee of their agreement to file three rounds of simultaneous submissions on the subject of the stay of enforcement of the Award: on January 27, February 17, and February 24, 2017 (the "**Simultaneous Submissions on the Stay**").  In addition, the parties indicated to the Committee their agreement to hold a hearing on the stay of enforcement of the Award (the "**Hearing on the Stay**") in March 2017.

9. By letter dated January 12, 2017, the Committee took note of the schedule of Simultaneous Submissions on the Stay agreed by the parties and informed them of its availability to hold the Hearing on the Stay on a date between 8 and 16 March 2017.  In view of the foregoing, the Committee decided to extend the provisional stay of enforcement of the Award until the parties presented their observations and the Committee reached a final determination on this matter.

10. On January 27, 2017, in accordance with the timetable set by the parties, Venezuela filed its first submission in support of the continuation of the provisional stay of enforcement of the Award ("**First Submission**").  The First Submission was accompanied by Annexes 1 to 5.

11. On the same date, Tenaris and Talta filed their first submission in opposition to the continuation of the provisional stay of enforcement of the Award ("**First Submission in Opposition to the Request for a Stay**").  The First Submission in Opposition to the Request for a Stay includes exhibits C-313 to C-338, and legal authorities CLA-60 to CLA-91.

12. On February 3, 2017, the Committee held its first session with the parties by telephone conference. During the first session, the Committee Members and the parties indicated their availability to hold the Hearing on the Stay on March 16, 2017.

13. By letter dated February 6, 2017, the Committee set March 16, 2017 as the date for the Hearing on the Stay. The Committee also proposed to hold a pre-hearing organizational meeting (the "**Organizational Meeting**") by telephone on February 10, 2017 in order to resolve any outstanding procedural, administrative, and logistical matters in preparation for the Hearing on the Stay.

14. By communications dated February 7-10, 2017, at the request of the Applicant, the parties and the Committee agreed on an alternative date to hold the Organizational Meeting.

15. On February 10, 2017, with the agreement of the parties, the Committee confirmed that the Organizational Meeting would be held on February 15, 2017.

16. On February 15, 2017, the parties and the Committee held the Organizational Meeting. On that same date, the Secretary of the Committee informed the parties that, if payment of the first advance requested from Venezuela by letter of the Centre dated December 28, 2016 (the "**Advance Requested**") was not received by February 24, 2017, ICSID would not be able to guarantee the provision of simultaneous interpretation services or stenographic transcription services to the parties during the Hearing on the Stay.

17. By letter of the same date, the Respondents requested that the procedure be suspended for failure to pay the Advance Requested and "[a]s a consequence of such a stay [they requested] that Venezuela's pending request to stay enforcement of the Award be rejected."

18. On February 17, 2017, in accordance with the timetable set by the parties, Venezuela filed its second submission in support of the continuation of the provisional stay of enforcement of the Award ("**Second Submission**"). The Second Submission includes exhibits R-169 to R-185, and legal authorities RLA-145 to RLA-158.

19. On the same date, Tenaris and Talta filed their second submission in opposition to the continuation of the provisional stay of enforcement of the Award ("**Second Submission in Opposition to the Request for a Stay**").  The Second Submission in Opposition to the Request for a Stay includes C-339 to C-347, and legal authorities CLA-92 to CLA-96.

20. On the same date, Venezuela expressed its opposition to Tenaris and Talta's request of February 15, 2017 to suspend the annulment proceedings and to lift the stay of enforcement of the Award.

21. On February 22, 2017, the Committee informed the parties that if the Advance Requested was not received by February 28, 2017, the Hearing on the Stay would be deemed canceled.  The Committee also informed the parties that in case the Advance Requested was not received by March 9, 2017, the Committee may consider deciding on the stay of enforcement of the Award without a hearing, based on the parties' three rounds of simultaneous submissions on this subject.

22. On February 24, 2017, after receiving a request for an extension from the Respondents and observations of the Applicant on February 23, 2017, the Committee granted an extension until February 28, 2017 for the parties to file their third submissions on the stay of enforcement of the Award.

23. On February 28, 2017, in accordance with the extension granted by the Committee, Venezuela filed its third submission in support of the continuation of the provisional stay of enforcement of the Award ("**Third Submission**").  The Third Submission includes exhibits R-186 to R-188, and legal authorities RLA-159 to RLA-161.

24. On the same date, Tenaris and Talta filed their third submission in opposition to the continuation of the provisional stay of enforcement of the Award ("**Third Submission in Opposition to the Request for a Stay**").  The Third Submission in Opposition to the Request for a Stay includes exhibits C-348 to C-358, and legal authorities CLA-97 to CLA-106.

25. Also, by letter of February 28, 2017, with regard to the Committee's communication of February 22, 2017, Venezuela requested that the question of the stay of the Award be presented at a hearing.  Venezuela further requested that the

hearing be rescheduled for a new date after April 16, 2017, and that the stay of enforcement of the award be maintained.

26. On March 1, 2017, in accordance with paragraph 21 above, the Hearing on the Stay scheduled for March 16, 2017 was cancelled.

27. By letter of March 3, 2017, the Respondents expressed their opposition to reschedule the Hearing on the Stay in view of the lack of payment of the Advance Requested.

28. By letter of March 10, 2017, the Committee informed the parties that it would proceed to issue its decision on the provisional stay of enforcement of the Award given its priority under Rule 54(1) of the ICSID Arbitration Rules, without holding a hearing on this issue. In addition, the Committee indicated that should it require information from the parties beyond what was provided in the three rounds of simultaneous submissions on this subject, it would request it in writing.

## II.   SUMMARY OF THE PARTIES' POSITIONS

### 1.   First Submission

29. Venezuela enumerates the defects of the Award: manifest excess of the Tribunal's powers, serious departure from fundamental rules of procedure, and failure to state reasons. Venezuela also states that the right to request the annulment of a defective award is an essential and fundamental aspect of the ICSID system. An integral part of that right is the possibility of requesting a stay of enforcement of an award until it is determined whether the award should be annulled.

30. According to Venezuela, this case does not present circumstances that should lead to a departure from the vast majority of decisions of other annulment committees in favor of maintaining the stay of enforcement. In this way, serious and irreparable damage would be avoided for Venezuela, such as the costs of defending itself against possible enforcement attempts or seizure of property. It would also avoid the possibility of having to recover the payment of the Award if it is annulled.

31. Venezuela points out that these damages are not justified considering that Tenaris and Talta already have the benefits offered by the ICSID system of automatic enforcement of the Award before any of the national courts of the Member States if the award is confirmed.  In addition, Tenaris and Talta may count on the interest granted in the Award that accumulates during this proceeding and that would compensate for any possible damage caused by the delay.

32. Venezuela insists that Tenaris and Talta have the burden of substantiating their request to lift the stay of enforcement since they are the party requesting it.

33. Venezuela notes that the same counsel for Tenaris and Talta have agreed to maintain a stay in the case *Vestey Group Ltd. v. Bolivarian Republic of Venezuela* and, therefore, saw no uncertainty or risk of non-payment of the award in that case. Moreover, Venezuela has demonstrated its commitment to comply with its international obligations, including its obligations to the Respondents to whom it paid US$1.970 million for the expropriation of SIDOR.  Based on these considerations, Venezuela concludes: "the only intention pursued by the [Respondents] with this discussion on the lifting of the stay is to pressure the Republic to the early compliance of an unjust and deficient Award under disadvantageous conditions for the country."[1]  Venezuela requests that the Committee reject the request to lift the stay of enforcement of the Award and maintain the stay until it decides on the Request for Annulment.

## 2.   First Submission in Opposition to the Request for a Stay

34. The Respondents agree to stay the enforcement of the Award provided that Venezuela grants them an appropriate security for compliance with the Award. The Respondents request that the stay of enforcement be lifted only if Venezuela does not comply with this condition.

35. The Respondents note that the Committee has discretion to continue the stay of enforcement if circumstances so require.  The continuation of the stay is exceptional, it is not automatic and it corresponds to Venezuela to demonstrate the circumstances that require it.  Respondents list examples of the factors that annulment committees have considered in deciding whether to continue the stay

---

[1] First Submission, ¶ 23.  Committee's translation.

of enforcement and note that, in the exercise of their wide discretion, annulment committees have conditioned the stay, particularly where there is a high risk of non-compliance with the Award.

36. According to the Respondents, Venezuela has adopted an explicit policy of non-compliance with adverse ICSID awards, as expressed by the highest reaches of the Venezuelan government, particularly when Venezuela denounced the ICSID Convention. The Respondents note that the annulment committee in the *OI*[2] case paid particular attention to the decision of the Venezuelan Supreme Court of Justice, which held that the conditions for arbitration under a treaty to which Venezuela is a party must not be contrary to the Constitution;[3] also, they observe that in that same decision the Tribunal cites another decision of the same Chamber[4] indicating that ICSID awards which are contrary to the Constitution are unenforceable in Venezuela. The Respondents argue that such a position violates Venezuela's obligation to pay ICSID awards immediately and also its obligation to structure its internal legal system to recognize and enforce ICSID awards without further review. In these circumstances the Committee can have no confidence that Venezuela will comply with the Award if it is confirmed and therefore there is overwhelming justification for conditioning the continuation of the stay to the conditions requested.

37. The Respondents describe the measures taken by Venezuela to thwart attempts to recover adverse awards. The Respondents claim that they are unaware of any compliance by Venezuela with any of the ICSID or Additional Facility awards after President Chávez's government. The Respondents also assert that this circumstance alone would justify the rejection of Venezuela's request to continue the stay of enforcement without conditions.

38. According to the Respondents, the security they request will allow the payment of the Award if it is not annulled and in the meantime will not require a transfer of assets to the Respondents. The argument that the compound interest set forth in the Award is sufficient compensation is not acceptable because it only covers the

---

[2] *OI European Group B.V. v. Bolivarian Republic of Venezuela* (ICSID Case No. ARB/11/25).

[3] First Submission, ¶ 27, referring to the judgment of the Supreme Court of Justice (SCJ) (Constitutional Chamber), Decision No. 1541, October 17, 2008 (C-316).

[4] SCJ (Constitutional Chamber), Decision No. 1942, July 15, 2003 (C-317).

delay in the payment of the Award if the stay of enforcement continues and the Award is confirmed, but it does not protect against the risk that Venezuela refuses payment.  In addition, the long queue of creditors of previous awards and the contraction of the Venezuelan economy create the possibility of Venezuela failing to pay its sovereign debt.

39. In anticipation of possible arguments of the Applicant, the Respondents contend that granting a security would not unfairly advantage Respondents by constituting payment in advance, nor would it wrongly penalize Venezuela for exercising its right to seek annulment.  In fact, a security is not a payment and the Respondents would not receive it before it was due.  Furthermore, the security does not represent an advantage for the Respondents because it would only place them where they would be if it were not for Venezuela's routine disregard of Article 53 of the ICSID Convention.

40. The Respondents also anticipate the fears of third-party attachment that Venezuela may express.  In that regard, the Respondents first allege that the jurisdiction of the Committee is limited and that such jurisdiction would be exceeded if the Committee refused to order the requested security out of concern for the indirect consequences which the security may entail for Venezuela. In any case, Respondents are as interested as Venezuela in not having the payment or security intercepted by third parties and they propose a standby letter of credit or a bank guarantee for the amount of the Award, issued or confirmed by a reputable international bank with no principal establishment in Portugal, Luxembourg or Venezuela, to be payable upon presentation of the Committee's decision. Respondents attach to their submission a proposal for such letter of credit. Respondents explain that a security structured in such manner would not be subject to attachment by Venezuela's creditors because it would not be Venezuela's property, and any pledged collateral could remain in Venezuela; a letter of credit is a promise by the issuing bank to pay from its own funds, not to hand over someone else's.  In these circumstances, if the Award were annulled, Venezuela would have no difficulty recovering the security it had provided.

41. In the alternative, the Respondents request that the stay of enforcement be lifted. According to the Respondents, there is ample justification to do so, given the persistence of Venezuela's non-compliance with its obligations under the ICSID Convention.

### 3.  <u>Second Submission</u>

42. Venezuela states that when the stay is requested together with the annulment of the Award, Article 52(3) of the ICSID Convention requires that it be granted. Moreover, the party that opposes its continuation has the burden of justifying why it should be interrupted and why a guarantee is necessary.

43. Venezuela reiterates that it has the right to request the annulment of the Award and that the near-unanimous practice of annulment committees has been to grant the stay of enforcement of awards.  According to Venezuela, there are no exceptional circumstances that justify a deviation from that practice.  Regarding the condition of a bank guarantee, Venezuela indicates that a bank guarantee was requested in only 14 cases of the 36 in which the stay of enforcement was conditionally granted. In any case, the requirement of a guarantee or a security is exceptional because it is not contemplated by the ICSID Convention.  According to Venezuela, the Respondents have not justified their need.

44. Venezuela criticizes the relevance of the decisions of other annulment committees presented by the Respondents.  Venezuela notes that annulment committees have varied the weight given to evidence even when the same State was involved. Venezuela argues that in its own experience as a respondent State in the course of the last year and a half, four annulment committees decided differently even though the proceedings concerned the same State.  That is why Venezuela states: "This Committee must reach its conclusions on the basis of the evidence and arguments presented by the [Respondents] in this case, and the [Respondents] cannot dispose of their burden with mere references to cases other than the present case."[5]

---

[5] Second Submission, ¶ 24.  Committee's translation.

45. Venezuela notes that "the denunciation of the ICSID Convention falls within its rights as a sovereign State, and cannot be interpreted as an indication of non-compliance with an award," [6] particularly when Venezuela, despite the denunciation, has continued to respect all pending proceedings and "has complied with arbitration awards or reached amicable settlements with investors..." [7] Venezuela criticizes the reference to declarations of the ex-president Chávez for being political declarations taken out of context. Venezuela explains that when ex-president Chavez allegedly indicated that Venezuela would not recognize ICSID decisions he was actually "referring to his understanding that Exxon Mobil had already been compensated by the ICC award." [8]

46. Venezuela then questions the relevance of the Venezuelan courts decisions relied upon by the Respondents to question Venezuela's willingness to comply with the Award. According to Venezuela, the citation of the Supreme Court of Justice [9] is *obiter dicta*, and there is nothing controversial in the national courts' position that the enforcement of an arbitration award conflicts with the Constitution or public order. Venezuela indicates that the judgment of the Supreme Court of Justice "validates the binding force of the final award by mentioning that 'no previous *exequatur* process is required'; and in the same sense it recognizes that *the enforcement* of the award, that is to say its application on specific assets, must conform to the constitutional guidelines, as in fact all judgments to be enforced in Venezuela must do." [10] In addition, Venezuela notes that the judicial decisions to which reference is made predate the issuance of adverse ICSID rulings and in subsequent years its courts have maintained their commitment to comply with international obligations.

47. Venezuela indicates that the awards that the Respondents allege that Venezuela did not comply with are awards subject to applications for annulment. Venezuela argues that the initiation of remedies provided for in the ICSID Convention cannot be considered as evidence of failure to comply with an award. On the contrary,

---

[6] *Id.*, ¶ 30. Committee's translation.

[7] *Id.*, ¶ 33. Committee's translation.

[8] *Id.*, ¶ 32. Committee's translation.

[9] SCJ (Constitutional Chamber), Decision No. 1942, July 15, 2003 (C-317).

[10] Second Submission, ¶ 37. Committee's translation. Emphasis in the original, internal citations omitted.

"[t]he filing of the remedies implies a confirmation of the Republic's commitment to the standards of the Convention, and not the contrary."[11]   Venezuela indicates that in the *Rusoro*[12] case, the time limit to contest the award has not expired and in the *Tidewater*[13] case, the decision on the application for annulment was not issued until December 29, 2016 and the Respondents have not provided any evidence that the respective award will not be complied with.

48.   Venezuela enumerates the cases in which it has negotiated settlement agreements with its counterparts and concludes: "The fact that Venezuela has paid billions of dollars to date in compliance with agreements with its creditors in multiple awards is far from a '*pattern of noncompliance* [*that*] *alone warrants a rejection of Venezuela's request for an unconditional stay of enforcement*'."[14]

49.   Venezuela rejects the arguments that it has relocated assets of CITGO and PDVSA to frustrate the payment to creditors of arbitration awards in the United States.   It questions the basis of these arguments, and alleges that they are based on speculation.   In any case, the Respondents are entitled to enforce the Award only against Venezuela and not against such companies.   Therefore, the Respondents' arguments are not relevant.

50.   With regard to the request for a security, Venezuela argues in the first place that it is not the role of this Committee to guarantee compliance with the Award. The powers of the Committee are limited to determining whether or not the Award is to be annulled.   In addition, it would be contrary to good faith to assume that Venezuela will not comply with the decision that the Committee renders. Venezuela notes that the ICSID Convention does not provide for the posting of security as a price for the stay of enforcement, contrary to the provisions of the New York Convention on the Recognition and Enforcement of Foreign Arbitral Awards of 1958.   Venezuela also notes that Article 47 of the ICSID Convention is not included in the list of provisions which apply *mutatis mutandis* to the annulment proceeding.

---

[11] *Id.*, ¶ 43. Committee's translation.
[12] *Rusoro Mining Ltd. v. Bolivarian Republic of Venezuela* (ICSID Case No. ARB(AF)/12/5).
[13] *Tidewater Investment SRL and Tidewater Caribe, CA v. Bolivarian Republic of Venezuela* (ICSID Case No. ARB/10/5).
[14] Second Submission, ¶ 47. Committee's partial translation.

51. According to Venezuela, the granting of a security would put the investor in a better position than the one before the request for stay of enforcement of the Award.  Venezuela indicates that the Respondents themselves acknowledge it by arguing that due to the numerous arbitrations any delay in the moment in which they may enforce the Award places them behind other creditors of Venezuela. Venezuela asserts that "[i]t would be a distortion of the annulment process that a claimant may take advantage of this situation to place itself in a more favorable situation than other claimants within the framework of the ICSID Convention."[15]

52. Venezuela also rejects the argument of its economic situation to justify the request of a security because, in certain instances, the existence of a critical economic situation has been precisely used to justify not granting a security.

53. Venezuela emphasizes the risk that third parties may attach or access the funds that could be granted as collateral in this proceeding.  Venezuela puts into question whether the letter of credit proposed by the Respondents is a solution since it is unlikely that a bank will issue a letter of credit without the obligor providing funds in an amount equal to that of the letter of credit.

### 4.  Second Submission in Opposition to the Request for a Stay

54. The Respondents note that Venezuela's arguments in its First Submission were mostly anticipated by the Respondents in their First Submission in Opposition to the Request for a Stay.  The Respondents insist that Venezuela bears the burden of demonstrating the circumstances meriting the continuation of the stay of enforcement and has not done so.  The Respondents conclude their argument in this regard by stating:

> "The decision for the present Committee, therefore, is not whether Venezuela bears the burden of justifying a continued stay (it does), whether conditional stays of enforcement are standard practice (they are), or whether the Committee has the power to condition a stay of enforcement on the provision of security (it does). Instead, the

---

[15] *Id.*, ¶ 73.  Committee's translation.

question is whether the Committee should, in this case, exercise its power to place conditions on a stay."[16]

55. According to the Respondents, Venezuela's fears of irreparable harm are unjustified because the Respondents' proposal of a standby letter of credit or an independent bank guarantee does not involve that the Respondents or third parties would have access to the amount of the Award while the annulment proceeding is ongoing. That is, Venezuela would not have to defend itself against enforcement actions of the Award, nor would it have to recover payments made to the Respondents in the event that the Award were annulled.

56. The Respondents argue that if the Committee decides to lift the stay without any type of condition, Venezuela's claim of irreparable damage due to having to defend itself in enforcement proceedings demonstrates Venezuela's disdain for the ICSID system; that is because awards are enforceable without possibility of appealing them or subjecting them to other remedies. Moreover, Venezuela's claim that it would be difficult to recover any sums collected by the Respondents is unfounded. The Respondents claim that they have sufficient assets in their States of incorporation and elsewhere and undertake to return any sums collected from Venezuela that are owing due to annulment.

57. The Respondents insist that Venezuela has an explicit policy of not complying with ICSID awards. According to the Respondents, the cases Venezuela mentions in support of its compliance with its international obligations do not in fact demonstrate it and there is an objective risk of non-compliance.

58. The Respondents maintain that, contrary to what is alleged by Venezuela, the continuation of the stay of enforcement is prejudicial to them. Moreover, the interest accrued subsequent to the date of the Award does not compensate for the risk of non-payment, and that would precisely be the risk faced by the Respondents in this case.

59. Lastly, Respondents state that they have no ulterior motives for opposing the Request for a Stay. According to the Respondents, there is no point in Venezuela's argument that Respondents' counsel acts inconsistently simply because in the

---

[16] Second Submission in Opposition to the Request for a Stay, ¶ 9.

*Vestey* [17] case they did not object to the continuation of the stay. Instead, Respondents note that this case is relevant in another respect because, due to the non-payment of the advance by Venezuela, the annulment committee in that case simultaneously lifted the stay of enforcement and suspended the annulment proceeding. The Respondents add that the same result should apply if this proceeding is suspended even if the Respondents' requests are not granted.

### 5. <u>Third Submission</u>

60. Venezuela insists on its arguments as to who bears the burden of proof and the lack of damages to the Respondents for the continuation of the stay of enforcement given the compound interest set forth in the Award and the evidence submitted by Venezuela concerning its compliance with international obligations. In this regard, Venezuela attaches a statement by the Attorney General addressed to the Committee in which "fully in accordance with the powers granted to him by the Constitution of the Republic, he emphatically confirms that the award will be recognized if it is not annulled and will comply with its international obligations."[18] The Attorney General asserts:

> "[I] confirm that, in the event that the Application for Annulment is not successful, the Republic, in accordance with the terms of the ICSID Convention, will recognize the mandatory nature of any confirmed part of the award and will comply with any pecuniary obligation established in the decision of the Annulment Committee.
>
> In conclusion, and in view of the rights and prerogatives vested in me by the Constitution of the Bolivarian Republic of Venezuela, I solemnly declare that **the Republic maintains unaltered its position of complying with all its international obligations, including the Award dated January 29, 2016, issued in the**

---

[17] *Vestey Group Ltd v. Bolivarian Republic of Venezuela* (ICSID Case No. ARB/06/4).

[18] Third Submission, ¶ 40. Committee's translation.

> **referenced case, in the event that this honorable Annulment Committee decides not to annul it in whole or in part.**"[19]

61. Venezuela thoroughly discusses the defects of the Award that it considers manifest and maintains that its compliance with settlement agreements reached with multiple creditors shows that it complies with awards and its international obligations.

62. According to Venezuela, the lifting of the stay of enforcement or the requirement of a security for its continuation would cause harm to the Republic that cannot be repaired with a subsequent rectification.  In light of Respondents' assertions, Venezuela clarifies that when it alleges as damages the costs of defending itself it refers to the enforcement procedures of the Award and not to proceedings where it questions the validity of the Award in the courts of the Member States of the ICSID Convention.  Venezuela also notes the costs and difficulty of recovering from the Respondents the value of the assets enforced if the Award is annulled because they are holding companies.  Venezuela further notes the costs of establishing and maintaining the security in case it is required.

63. Venezuela notes the Committee's statement with respect to deciding on the continuation of the stay of enforcement of the Award based on the submissions of the parties and not on the mere delay of payment and considers that this is the minimum demanded by the procedural rights of the parties.  However, Venezuela maintains that the procedural rights of the parties also require that the dispute be presented to the Committee at a hearing where the parties may respond to the Committee's questions.  Venezuela recalls that it "has categorically reiterated that it is doing everything possible to make the payments of the advances requested by ICSID and has given a commitment to do so unconditionally." [20]

### 6.  Third Submission in Opposition to the Request for a Stay

64. The Respondents insist on their arguments as to which party bears the burden of proof, they argue that the Committee has the power to impose conditions on the lifting of the stay of enforcement of the Award and insist that Venezuela has not

---

[19] R-188, emphasis in the original.  Committee's translation.

[20] Third Submission, ¶ 66.  Committee's translation.

justified its request to continue the stay without conditions.  The Respondents again stress the failure to comply with ICSID awards and Venezuela's policy of not contributing to the costs of arbitrations filed against them.  In that regard, the Respondents cite the Attorney General's communication to the Secretary-General of ICSID informing her that "this Agency instructed all its representatives and agents to refrain from making payments relating to arbitrations instituted against our country, in the above-mentioned circumstances.  In this regard, we hereby inform you that no new payments will be made because they would be improper."[21]

65.  According to the Respondents, Venezuela's claims have not allayed concerns regarding its willingness to comply given the statements from high-ranking Venezuelan officials, including its former president and the position adopted by the Constitutional Chamber of the Supreme Court of Justice.  The Respondents explain: "The key issue […] is that Venezuelan law gives judges the power to review the *merits* of an ICSID award for compliance with Venezuelan constitutional law (which is a test that ICSID awards will *per se* fail, according to Venezuela's own officials).  That is clearly wrong: substantive review of ICSID awards by domestic courts is not permitted under the ICSID Convention."[22]

66.  The Respondents insist that Venezuela has not once complied with an adverse award in the post-President Chavez era and that its arguments concerning post-award settlements only confirm that Venezuela will not voluntarily pay the Award in full if it is confirmed.  The Respondents clarify that they do not contest Venezuela's right to seek annulment of awards, but rather the fact that it seeks the *vacatur* or annulment of every adverse award, even though these are exceptional remedies.

67.  The Respondents reiterate that the balance of interests favors their request for a security if the stay of enforcement is maintained, and note that Venezuela has not considered in its briefs how the structure of the security proposed by the Respondents seeks to avoid the concerns expressed by Venezuela.  The only reasonable alternative is to lift the stay.

---

[21] C-350.  Letter dated April 26, 2013.  Committee's translation.

[22] Third Submission in Opposition to the Request for a Stay, ¶ 48.  Emphasis in the original, internal citation omitted.

### III.    THE PARTIES' REQUESTS FOR RELIEF

#### 1.   Venezuela's Request for Relief

68.  Venezuela requests that the Committee:

"(I) Maintain the stay of enforcement of the Award until the Committee decides on the Request for Annulment of said Award;

(II) Reject Tenaris and Talta's request to impose a condition on maintaining the stay of enforcement of the Award;

(III) Reject Tenaris and Talta's request to lift the stay of enforcement of the Award.

(V) Order Tenaris and Talta to pay the costs related to this procedure."[23]

#### 2.   Respondents' Request for Relief

69.  Respondents request that the Committee:

"(a) ORDER that the stay of enforcement be continued pending the resolution of this application for annulment, *on condition that* Venezuela post financial security sufficient to satisfy the Award in full on the terms and conditions stated in Appendix A to the [Respondents' First Submission in Opposition to the Request for a Stay], or as otherwise determined by the Committee, failing which the stay of enforcement shall be lifted immediately;

(b) in the alternative to (a), above, ORDER that the stay of enforcement be lifted immediately;

(c) AWARD the [Respondents] their full costs of this procedure; and

---

[23] Third Submission, ¶ 67.  Committee's translation.

(d) AWARD any other relief to the [Respondents] deemed appropriate by the Committee."[24]

## IV.    ANALYSIS OF THE *AD HOC* COMMITTEE

### 1.  <u>The Legal Framework</u>

70. The stay of enforcement of an award is governed by Article 52(5) of the ICSID Convention and Rule 54 of the ICSID Arbitration Rules.  Article 52(5) provides:

> "The Committee may, if it considers that the circumstances so require, stay enforcement of the award pending its decision. If the applicant requests a stay of enforcement of the award in his application, enforcement shall be stayed provisionally until the Committee rules on such request."

71. Rule 54 titled "Stay of Enforcement of the Award" provides:

> "(1) The party applying for the interpretation, revision or annulment of an award may in its application, and either party may at any time before the final disposition of the application, request a stay in the enforcement of part or all of the award to which the application relates. The Tribunal or Committee shall give priority to the consideration of such a request.
>
> (2) If an application for the revision or annulment of an award contains a request for a stay of its enforcement, the Secretary-General shall, together with the notice of registration, inform both parties of the provisional stay of the award.  As soon as the Tribunal or Committee is constituted it shall, if either party requests, rule within 30 days on whether such stay should be continued; unless it decides to continue the stay, it shall automatically be terminated.
>
> (3) If a stay of enforcement has been granted pursuant to paragraph (1) or continued pursuant to paragraph (2), the Tribunal or

---

[24] Third Submission in Opposition to the Request for a Stay, ¶ 81.

Committee may at any time modify or terminate the stay at the request of either party.  All stays shall automatically terminate on the date on which a final decision is rendered on the application, except that a Committee granting the partial annulment of an award may order the temporary stay of enforcement of the unannulled portion in order to give either party an opportunity to request any new Tribunal constituted pursuant to Article 52(6) of the Convention to grant a stay pursuant to Rule 55(3).

(4) A request pursuant to paragraph (1), (2) (second sentence) or (3) shall specify the circumstances that require the stay or its modification or termination.  A request shall only be granted after the Tribunal or Committee has given each party an opportunity of presenting its observations.

(5) The Secretary-General shall promptly notify both parties of the stay of enforcement of any award and of the modification or termination of such a stay, which shall become effective on the date on which he dispatches such notification."

72. As the ICSID Convention is a treaty, to the extent that the Committee has to interpret its provisions, the Committee will be guided by the principles of international law expressed in Articles 31 and 32 of the Vienna Convention on the Law of Treaties.

73. In accordance with the aforementioned provisions of the ICSID Convention and the ICSID Arbitration Rules, the Committee may stay the enforcement of the Award if circumstances so require after inviting the parties to submit their observations.  Neither the Convention nor the Arbitration Rules reveal what those circumstances are nor the criteria for assessing their relative importance.  The stay of enforcement is the exception to the obligation to "abide by and comply with" the award provided for in Article 53(1) of the Convention.  Its exceptional nature is expressed in the terms of this article:

> "The award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except[25] those provided for in this Convention. […]"

74. In other words, the stay is an exception in the context of a remedy that is already extraordinary, as recognized by ICSID itself:

> "The limited and exceptional nature of the annulment remedy expressed in the drafting history of the Convention has been repeatedly confirmed by ICSID Secretary-Generals in Reports to the Administrative Council of ICSID, […]".[26]

75. Within this legal framework, the Committee will consider the claims of the parties, beginning with preliminary considerations in the light of the procedural background and the parties' arguments, followed by a consideration of the claims regarding the burden of proof.

## 2. Preliminary Considerations

76. First, the Committee decided, as already described, to proceed to rule on whether to continue the provisional stay of enforcement without a hearing after three rounds of written submissions.  While it is true, as Venezuela has pointed out, that the hearing had been agreed by the parties, that agreement was superseded by the Respondents' request to lift the provisional stay at the same time that the annulment proceedings were suspended as a result of the delay of Venezuela in paying the Advance Requested by ICSID.  In deciding to cancel the hearing and issue this decision without a hearing, the Committee took into account the priority it must give to decide on the Request for a Stay and that the parties have had on three occasions the opportunity to express all their arguments and offer all their evidence in writing.  In addition, the Committee may at all times request further information or request clarifications if it deems it necessary.

---

[25] Emphasis of the Committee.

[26] Updated Background Paper on Annulment for the Administrative Council of ICSID, May 5, 2016, ¶ 73.  See footnote 137 that accompanies the cited text.

77. Second, it should be noted that the continuation of the stay of enforcement depends on the circumstances of the particular case and on their assessment by the Committee.  The Committee is aware that in the vast majority of cases the stay of enforcement has continued without this implying a presumption favorable to its continuation.  Given the variety of situations and circumstances alleged by the various parties, it always depends on how they are appreciated by the Committee.  Neither the ICSID Convention nor the ICSID Arbitration Rules provide guidelines on how to assess or weigh the different circumstances.

78. Third, while Venezuela has described the defects of the Award in its submissions, this is not the pertinent procedural moment for the Committee to consider them.  The circumstances that may dictate the need to continue or not the stay of enforcement are normally independent of the relevance of the grounds of annulment alleged by the applicant party on annulment.  The Committee therefore considers that it is not appropriate to analyze these grounds at this time.

79. Fourth, the parties have referred to decisions of annulment committees in other cases involving Venezuela and other countries.  The Committee seriously considers the decisions of other committees that the parties have invoked, which form part of their arguments, and which have been developing a body of case-law in respect of investment law worthy of analysis.  Nonetheless, the Committee recalls that it is not obliged to follow any of these decisions and that it must decide the issues in question, as a priority, on the basis of its own reasons and the specific circumstances of the case.

### 3.  The Burden of Proof

80. The parties disagree as to who bears the burden of proof in order to justify the continuation of the stay and the condition of a security in the event that the decision is favorable to the continuation of the stay.  In the first place, the Committee notes that while Venezuela requests the continuation of the stay, as recorded in Procedural Order No. 1,[27] the Respondents have asked that if such request is granted by the Committee the continuation of the stay of enforcement is conditioned on the posting of a security.

---

[27] ¶ 22.1.

81. While it is true that Respondents have requested the lifting of the provisional stay of enforcement, such request must be considered in the context of the provisional nature of the stay granted by the Acting Secretary-General at the time of registration of Venezuela's Application for Annulment.  Pursuant to Rule 54(2), this provisional stay shall automatically be terminated unless the Committee decides to continue the stay.  That is, if Venezuela had not requested continuity, the stay would be lifted without the need for the Respondents to request it.  Therefore, the party requesting its continuity must prove the circumstances that warrants it.

82. Moreover, the party requesting a stay subject to conditions must prove that, under the circumstances, the requested conditions are justified. In short, each party must justify the claim it seeks.

### 4.  Do Circumstances Exist that Require the Continuity of the Stay of Enforcement of the Award?

83. Under Rule 54(4), a request for stay shall specify the circumstances that require it.  As abovementioned, the parties start from conflicting premises on the question of who must demonstrate if these circumstances exist.  However, the simultaneous filing of submissions in each of the rounds has forced each party to defend its position on the possible allegations of the other party and to complement or reinforce them in the subsequent round or rounds.  The Committee will firstly consider the alleged circumstances that justify the continuation of the stay of enforcement of the Award and, secondly, whether a security should be required in the event that the Committee decides to continue the stay.

84. The parties' arguments concern the following circumstances as justification for the continuation of the stay: the damages alleged by the parties, the likelihood of having to recover the payment of the Award if it is annulled and Venezuela's compliance with its international obligations.  The Committee will proceed to consider each of these arguments and weigh their effect on the rights of the parties.

### A.  Damages Alleged by the Parties

85. While Venezuela alleges serious and irreparable damages for the costs of defending itself from the enforcement of the Award and from damage to its

reputation, the Respondents contend that compound interest does not safeguard the risk of non-compliance with the Award, since the delay in the compliance with the Award puts the Respondents further back in the long line of Venezuela's creditors. In order to avoid these risks, the Respondents call for the granting of a bank guarantee.

86. The enforcement of the Award carries costs for both parties, particularly if one of them challenges it.  The Committee has difficulty in considering the defense costs of a possible enforcement among the risks incurred by one of the parties when both parties are bound to comply with the Award.  Compound interest may compensate for the pure delay inherent to the annulment proceeding but not for other risks such non-compliance with the Award in case it is confirmed.  The Committee will consider this other risk further on.   Regarding the reputational damage to Venezuela if this Committee lifts the stay, the Committee notes that it would not be the first time that an annulment committee lifts a provisional stay of enforcement of an award adverse to Venezuela,[28] and it is part of the possible actions to which any party is exposed in an annulment proceeding.

### B.   Difficulty in Recovering the Amounts Paid in Compliance with the Award

87. There is no indication in the record that the Respondents are not solvent or that they will not voluntarily return the sums paid by Venezuela in compliance with the Award if it were annulled.  Venezuela bases its claims on the structure of the group to which the Respondents belong and on their nature as holding companies.  While the Committee does not deny that this concern deserves consideration, in its Second Submission in Opposition to the Request for a Stay, the Respondents have clearly stated their willingness to return such sums if the Award was annulled: "…to put the matter beyond any doubt, if the Award is annulled, the Claimants hereby undertake to return any sums collected from Venezuela that are owing due to annulment."[29]

---

[28] See, for example, Decision on the Stay of Enforcement of the Award, *OI European Group B.V. v. Bolivarian Republic of Venezuela* (ICSID Case No. ARB/11/25).

[29] Second Submission in Opposition to the Request for a Stay, ¶ 15.

## C.  Compliance with International Obligations

88. There is no doubt that Venezuela had the right to denounce the ICSID Convention. The Committee also acknowledges Venezuela's participation in the multiple pending ICSID proceedings and does not question Venezuela's eventual ability to meet its obligations.  The Committee does not need to analyze whether the settlement agreements discussed by the parties constitute evidence of Venezuela's compliance with its international obligations, as it has become clear in this proceeding that Venezuela has difficulty in advancing the sums to which it is obliged for this proceeding to continue, a proceeding initiated by Venezuela with costs well known by the Republic.  The Committee does not need nor is it competent to evaluate the economic situation of the country, but it is evident that Venezuela, in the experience of this Committee, has limitations in its ability to pay the costs of the proceeding in a timely manner.  In any event, for whatever reason beyond this Committee, it is objectively true that those payments have not been completed.

89. Contrary to ICSID practice, the first session was held without receiving the Advance Requested. Given the priority that the Committee must grant to decide whether to continue the provisional stay of enforcement, the Committee, despite the lack of funds, has gone ahead for the purpose of issuing this decision.  Nearly two months after the first session, the Advance Requested has not been received, nor has Venezuela committed to make the payment by a specified date.  The Committee cannot fail to notice that this situation is repeated in three ongoing annulment proceedings in which Venezuela has requested annulment;[30] all of them stayed for non-payment of the advances required by ICSID, despite the fact that their continuation should be in Venezuela's interest.  This is particularly worrying because it fits with the non-payments to ICSID expressed by the Attorney General to the Secretary-General of ICSID in 2013.[31]

---

[30] These are the three annulment proceedings that are stayed for non-payment of the required advances: *Flughafen Zürich A.G. and Gestión e Ingeniería IDC S.A. v. Bolivarian Republic of Venezuela* (ICSID Case No. ARB/10/19), CLA-60; *OI European Group B.V. v. Bolivarian Republic of Venezuela* (ICSID Case No. ARB/11/25), CLA-65; and *Vestey Group Ltd v. Bolivarian Republic of Venezuela* (ICSID Case No. ARB/06/4), CLA-347.

[31] C-350.  The Committee acknowledges that, by electronic communication dated March 2, 2017, Venezuela authorized ICSID to transfer the remainder of outstanding repayments to Venezuela from two accounts of previous ICSID cases into the account established for this annulment

90.   The Committee recognizes the payment assurances of the Award clearly expressed directly to this Committee also by the Attorney General and cited in this decision. However, these assurances should be considered in the context of previous communications, such as the one mentioned in the previous paragraph and that of the Ministry of Popular Power for Foreign Affairs denouncing the ICSID Convention and informing that its national Constitution "invalidate[d], in its spirit and in its letter, the provisions of said Convention."[32]   These communications concerning ICSID undermine the weight that the communication of the Attorney General deserves, not because there is doubt about his word but there is doubt about its effectiveness within the constitutional framework of the country.  In view of these considerations, the Committee does not need to analyze the relevance of the claims on asset stripping exchanged between the parties.

D.   Weighting of How the Continuation or Lifting of the Stay of Enforcement Affects the Parties

91.   In weighing how each party would be affected by the continuation of the provisional stay of enforcement or its lifting, the Committee is aware that under Rule 54(1) either party may request the stay of enforcement of the Award for the duration of the annulment proceeding.  It also takes into account that the suspension of the annulment proceeding is imminent, as already announced to the parties.  That is, unless the provisional stay of enforcement is lifted, the suspension of the annulment proceeding will entail the continuation of the provisional stay of enforcement of the Award indefinitely until Venezuela decides to provide funds to the case account or until the discontinuance of the proceeding under Rule 14(3)(d). The Committee notes that the suspension of one of the pending annulment proceedings dates back to July 8, 2016.[33]   In this sense, the initiation of an annulment proceeding becomes an instrument to postpone the exercise of the rights recognized in the Award to the creditor thereof and leaves this exercise at the

---

proceeding.  However, this is less than 10% of the Advance Requested and completely insufficient to finance this proceeding.

[32] C-315, cited by the Respondents in the First Submission in Opposition to the Request for a Stay, ¶ 25.  Committee's translation.

[33] It concerns the case *Flughafen Zürich A.G. and Gestión e Ingeniería IDC S.A. v. Bolivarian Republic of Venezuela* (ICSID Case No. ARB/10/19), as indicated in ICSID's website.

mercy of the will of one of the parties and not the decision of the Committee.  The Committee does not consider that this result can be offset by the compound interest provided for in the Award nor this is the purpose of the stay of enforcement under the ICSID Convention or the ICSID Arbitration Rules. In view of the Committee and in the light of the other circumstances alleged by the parties and the considerations made by the Committee with respect to each of them, the procedural situation resulting from the continuation of the stay of enforcement when the suspension of the annulment proceeding is imminent fundamentally unbalances the position of the parties.  For these reasons, the Committee concludes that the circumstances do not allow for the continuation of the provisional stay.

### E. Stay of Enforcement of the Award Conditioned to the Granting of a Bank Guarantee

92.  The Respondents have requested that if the Committee decides not to lift the stay of enforcement, it conditions the stay so that Venezuela provides a bank guarantee in favor of the Respondents.  In view of the Committee's conclusion concerning the circumstances which might justify the continuation of the stay, the imminence of the suspension of the proceedings and the vehement opposition of Venezuela to the requirement of such a guarantee, the Committee considers that the requirement of a guarantee would involve prolonging this provisional situation at least until the condition has been met or no longer met, increasing the costs of ICSID and the Committee.  It is therefore favorable to lift the stay of enforcement. Consequently it would be irrelevant to consider here the arguments of the parties on whether the Committee has the power to condition the stay of the enforcement of the Award on the granting of a guarantee.

## V.    COSTS

93.  Each party has sought in its request for relief that the Committee orders the other party to pay the costs.  The Committee considers it more appropriate to rule on this request in its decision on the Request for Annulment when it will have a comprehensive overview of the procedure.

## VI.   DECISION

94.   For the reasons set out above, the Committee decides:

   a) To lift the provisional stay of enforcement of the Award.

   b) To reserve its decision on costs.


For and on behalf of the *ad hoc* Committee,


_____
Dr. Andrés Rigo Sureda
President of the Committee
Date: 24 March 2017