UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **TENARIS S.A.**, *et al.*,<br><br>              Petitioners,<br><br>     v.<br><br>**BOLIVARIAN REPUBLIC OF VENEZUELA**,<br><br>              Respondent. | Case No. 18-cv-1371 (CRC) |

## MEMORANDUM OPINION

Petitioners Tenaris S.A. ("Tenaris") and Talta-Trading E Marketing Sociedade Unipessoal LDA ("Talta") move this Court to enter a default judgment confirming a 2016 arbitral award issued in their favor against the Bolivarian Republic of Venezuela. After Petitioners filed their motion, Venezuela entered an appearance in the case. The Court therefore declines to hold Venezuela in default but, for the following reasons, will grant in part and deny in part the petition to recognize and enforce the award.

Tenaris and Talta are Luxembourg and Portuguese companies, respectively, that hold interests in the steel industry. Tenaris S.A. v. Bolivarian Republic of Venezuela, ICSID Case No. ARB/11/26, Award, ¶¶ 1, 4 (Jan. 29, 2016), ECF No. 1-3. In the early 2000s, Petitioners invested in a Venezuelan company, Materiales Siderúrgicos Masisi S.A, that made a product used in the production of steel. Id. ¶¶ 7, 11. On April 30, 2008, Venezuela expropriated Petitioner's investment without compensation. Id. ¶¶ 5–7. Following that expropriation, Petitioners filed a Request for Arbitration against Venezuela with the International Centre for Settlement of Investment Disputes ("ICSID"), alleging that the country's actions violated the

bilateral investment treaties between Luxembourg and Venezuela and Portugal and Venezuela. Id. ¶¶ 7, 11.

On January 29, 2016, the ICSID arbitral tribunal asserted jurisdiction over the dispute and found that Venezuela had unlawfully expropriated Petitioners' investment in violation of the bilateral investment treaties. Tenaris S.A. v. Bolivarian Republic of Venezuela, ICSID Case No. ARB/11/26, Award ("Award Part II"), ¶ 625 (Jan. 29, 2016), ECF No. 1-4.  The tribunal awarded Petitioners: $87,300,000 USD as compensation for the unlawful expropriation; $85,501,213.70 USD in pre-award interest from April 30, 2008 until the date of the award; $225,000 USD to compensate Petitioners for funds advanced to ICSID to cover Venezuela's share of the costs of the arbitration; and post-award interest in the amount of 9% per annum, compounded every six months.  Id. ¶¶ 624–25.

On March 14, 2016, Venezuela filed a request for rectification with the arbitral tribunal, claiming that the tribunal had erred by awarding duplicative damages.  Tenaris S.A. v. Bolivarian Republic of Venezuela, ICSID Case No. ARB/11/26, Rectification Decision, ¶ 2 (June 24, 2016), ECF No. 14-3.  That rectification request was rejected on June 24, 2016.  Id. ¶ 114. Additionally, on May 31, 2016, Venezuela filed a separate application for annulment of the award with ICSID, which it renewed on September 21, 2016, after the rectification request was denied.  Tenaris S.A. v. Bolivarian Republic of Venezuela, ICSID Case No. ARB/11/26, Annulment Decision, ¶ 4 (Aug. 8, 2018), ECF No. 14-4.  The application for annulment was rejected on August 8, 2018.  Id. ¶ 282.  The ICSID proceedings are therefore concluded and the arbitral award is final.

Petitioners filed this action, which seeks recognition of the arbitral tribunal's award pursuant to 22 U.S.C. § 1650a and Article 54 of the ICSID Convention, on June 8, 2018.

Petitioners effected service pursuant to 28 U.S.C. § 1608(a)(4) on July 26, 2019. After Venezuela failed to respond to the lawsuit, Petitioners requested that the Clerk of the Court issue an entry of default, which she did on October 30, 2019. Petitioners then moved for a default judgment.

Suspecting that Venezuela's silence was likely due to a lack of notice on the part of the government's U.S.-recognized representatives, the Court sent a letter to Special Attorney General of Venezuela José Ignacio Hernández to inform him of this litigation and Petitioners' motion for a default judgment. Counsel for Venezuela promptly responded by entering an appearance and filing an opposition to the motion. Venezuela's appearance and opposition render default judgment inappropriate. In the interest of justice, however, the Court will consider the parties arguments as they relate to the petition to recognize and enforce the arbitral award.

As both parties agree, this Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1330(a) and the Foreign Sovereign Immunity Act's arbitration exception, 28 U.S.C. § 1605(a)(6), because this is an action to confirm an arbitral award that is governed by a treaty to which the United States is a party—the Convention on the Settlement of Investment Disputes between States and Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270, 575 U.N.T.S. 159. The parties further agree that the Court should confirm the award. See Resp. Opp. to Mot. for Summary J. 1 (Venezuela "does not oppose the imposition of judgment[.]"). They disagree on just three points, which the Court considers in turn.

First, the parties dispute how post-judgment interest—that is the interest that applies after this Court enters judgment enforcing the award—should be calculated. The Court's entry of judgment demarcates the period of *post-award* interest from the period of *post-judgment* interest.

It is long established that, as a matter of common law, "[w]hen the plaintiff recovers a valid and final personal judgment, his original claim is extinguished and rights upon the judgment are substituted for it. The plaintiff's original claim is said to be 'merged' in the judgment." OI European Grp. B.V. v. Bolivarian Republic of Venezuela, No. CV 16-1533 (ABJ), 2019 WL 2185040, at *6 (D.D.C. May 21, 2019) (quoting Restatement (Second) of Judgments § 18 cmt.a (1982)). "Reflecting that notion, numerous circuits have concluded that once a federal court confirms an arbitral award, the award merges into the judgment and the federal rate for post-judgment interest presumptively applies." Bayer CropScience AG v. Dow Agrosciences LLC, 680 F. App'x 985, 1000 (Fed. Cir. 2017) (collecting cases).

Consistent with that approach, Venezuela asks that the Court impose post-judgment interest at the rate set forth in 28 U.S.C. § 1961(a), which applies to civil money judgments recovered in a district court. Section 1961(a) provides that "interest shall be calculated from the date of the entry of judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of judgment." Petitioners, by contrast, maintain that post-judgment interest should accrue at the rate set out in the award, which provides that "*post-award interest should be paid at the . . . 9% rate compounded semi-annually, from the date of the award until payment in full of all sums due.*" Award Part II ¶ 595 (emphasis added).

As a fellow court in this district recently held, the terms of § 1961 are "mandatory" and "do not permit the exercise of judicial discretion in its application." OI European Grp. B.V., 2019 WL 2185040, at *6 (quoting Carte Blanche (Sing.) Pte., Ltd. v. Carte Blanche Int'l, Ltd., 888 F.2d 260, 268–70 (2d Cir. 1989)). Thus, while parties may agree to a post-judgment interest rate that differs from the one specified in § 1961, they must express that intent through "clear,

4

unambiguous and unequivocal language." Id. (quoting Westinghouse Credit Corp. v. D'Urso, 371 F.3d 96, 102 (2d Cir. 2004)); see also Bayer CropScience AG, 680 F. App'x at 1000 ("[C]ourts have required the parties or arbitrators to unambiguously express their intent to replace the federal rate for the post-judgment period."). For that reason, numerous courts have held that where, as here, "an award specifies an interest rate 'until payment,' that language does not clearly portray the intent of the parties to replace the federal interest rate." OI European Grp. B.V., 2019 WL 2185040, at *6 (collecting cases); see also Tricon Energy Ltd. v. Vinmar Int'l, Ltd., 718 F.3d 448, 457 (5th Cir. 2013) ("A judgment confirming an arbitration award—like any other civil judgment—is subject to § 1961."); Fid. Fed. Bank, FSB v. Durga Ma Corp., 387 F.3d 1021, 1024 (9th Cir. 2004) ("[O]nce an arbitration award is confirmed in federal court, the rate specified in § 1961 applies."). Rather, in order to overcome the presumption that § 1961 applies, the parties must explicitly agree to apply a different post-judgment interest rate or "the award must explicitly state the interest rate to be applied 'post-judgment.'" OI European Grp. B.V., 2019 WL 2185040, at *6.

Here, Petitioners do not identify any agreement between the parties to apply a post-judgment rate different than that in § 1961. Nor do they explain why the language in the award is sufficiently unambiguous to overcome § 1961's mandate.[1] This language, which does not specify a post-judgment rate, is simply too generalized to supplant the terms of § 1961. Thus, § 1961's rate shall apply to the accumulation of interest from the date of this ruling.

---

[1] Indeed, since Petitioners do not respond to Respondent's argument in favor of § 1961, the Court could deem this argument conceded. It will nevertheless address the merits.

Second, the parties disagree about attorneys' fees. Petitioners argue that attorneys' fees are called for because Venezuela has failed to abide by a clear legal duty to pay the arbitral award. The Court disagrees that fees are warranted. Venezuela has endured several years of political upheaval and an escalating humanitarian crisis. See, e.g., Dany Bahar & Meagan Dooley, Brookings Institution, Venezuela Refugee Crisis to Become the Largest and Most Underfunded in Modern History (Dec. 9, 2019).[2] Moreover, upon notification from the Court of this lawsuit, Venezuela's U.S.-recognized representatives promptly responded and filed a brief which acknowledged forthright that imposition of the ICSID award is proper. Resp. Opp. to Mot. for Summary J. 1 (Venezuela "does not oppose the imposition of judgment[.]"). Given the country's dire political and economic situation, and its candor in response to Petitioners' motion, the Court, in its discretion, declines to award Petitioners attorneys' fees.

Lastly, Venezuela argues that, although it is appropriate to enter judgment confirming the arbitral award, that judgment should be stayed in light of the United States' Venezuelan sanctions program. A bit of background is in order. In 2015, President Obama exercised his powers under the International Emergency Economic Powers Act, 50 U.S.C. § 1702(a)(1)(B), to declare a national emergency in Venezuela. Exec. Order No. 13,682, 80 Fed. Reg. 12,747 (Mar. 8, 2015). Subsequently, President Trump issued EO 13,884, which ordered that all Venezuelan property and related interests that come into the possession of a U.S. person "are blocked and may not be transferred, paid, exported, withdrawn, or otherwise dealt in." Exec. Order No. 13884, 84 Fed. Reg. 38,843 (Aug. 5, 2019), § 1(a). President Trump further directed the Secretary of the Treasury to issue regulations to implement the order. Pursuant to that authority,

---

[2] https://www.brookings.edu/blog/up-front/2019/12/09/venezuela-refugee-crisis-to-become-the-largest-and-most-underfunded-in-modern-history.

6

on November 22, 2019, the Office of Foreign Assets Control (OFAC), a part of the Treasury Department, issued regulations providing that:

> Notwithstanding the existence of any general license issued under this part, or issued under any Executive [O]rder issued pursuant to the national emergency declared in E.O. 13692, the entry into a settlement agreement or the enforcement of any lien, judgment, arbitral award, decree, or other order through execution, garnishment, or other judicial process purporting to transfer or otherwise alter or affect property or interests in property blocked pursuant to § 591.201, as referenced in § 591.506(c), is prohibited unless authorized pursuant to a specific license issued by OFAC pursuant to this part.

31 C.F.R. § 591.407.

Venezuela argues that these regulations mitigate in favor of a stay—but they actually point in the opposite direction. Because Petitioners will need to obtain OFAC approval before they can enforce the award, there is no need for the Court to stay the judgment. OFAC, which is well-versed in weighing the competing interests involved in enforcing judgments against other nations, is the more appropriate body to make the decision whether to stay the enforcement of the award. Indeed, the Court may well lack the discretion to stay the enforcement of an ICSID award because doing so would likely afoul of ICSID's implementing statue, 22 U.S.C. § 1650a, which provides that "[t]he pecuniary obligations imposed by such an award *shall* be enforced and *shall* be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States." (emphasis added). Accordingly, the Court declines to stay the judgment.

For the foregoing reasons, the Court will deny Petitioners' Motion for Default Judgment and grant in part and deny in part the Petition to Recognize and Enforce the Arbitral Award. A separate Order will follow.

_____
CHRISTOPHER R. COOPER
United States District Judge

Date:  June 17, 2020